**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOUIS NEPTUNE, | |
| Plaintiff, | Civil Action No. 17-12057 (BRM) (LHG) |
| v. | **OPINION** |
| ANDREW CAREY, et al., | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is *pro se* Plaintiff Louis Neptune's ("Plaintiff") amended civil rights complaint, filed pursuant to 42 U.S.C. § 1983 (ECF No. 16) and Plaintiff's "Emergent Motion for Declaratory, Injunctive and Other Appropriate Relief" (ECF No. 24). Based on his affidavit of indigence (ECF No. 13), the Court previously granted Plaintiff leave to proceed *in forma pauperis* and granted Plaintiff permission to file an all-inclusive amended complaint. (ECF Nos. 8 and 15.)

At this time, the Court must review the amended complaint, pursuant to 28 U.S.C. §§ 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the amended complaint is **DISMISSED** and the Emergent Motion is **DENIED.**

I. **BACKGROUND**

The amended complaint names twelve defendants and Plaintiff is suing them in their individual and official capacity. The twelve defendants are: (1) Middlesex County Prosecutor's Office; (2) Middlesex County Sheriff's Office; (3) Middlesex County; (4) Andrew Carey

("Carey"); (5) Diane Pincus; (6) Marcia Silva ("Judge Silva"); (7) Mildred Scott; (8) Phil Murphy; (9) Debra Vezenia; (10) Linda Lang Infusino; (11) Plainsboro (Brandon); and (12) Ronald Rios.

Plaintiff alleges he was arrested and charged with a crime on September 2, 2016.[1] Plaintiff contends Defendant Carey was motivated by Plaintiff's grievance[2] against a company Carey had a financial interest in. (*Id.* at 16.) According to the amended complaint, Plaintiff's grievance against this company set off a series of constitutional violations against him including false criminal accusations and surveillance at the behest of Carey and other named defendants. Plaintiff does not provide the disposition of the case stemming from the September 2016 arrest. Furthermore, Plaintiff does not provide where or what he was arrested for. Plaintiff submits "[t]he fake arrest on September 3, 2016 was a way for Carey to get my fingerprints and actual mugshot so he could send to law enforcement so that I can be harassed anywhere I go in the country." (*Id.* at 7.)

Plaintiff alleges his first interaction with Carey was in 2013 or 2014. (*Id.* at 7.) He and Carey's paths crossed when Plaintiff purchased a car from TriState Motor Group, a company in which Carey had a financial interest. (*Id.*) Plaintiff does not explain how he is aware of Carey's financial interest in TriState Motor Groups, but provides that Carey's wife was "the attorney of record, etc." (*Id.* at 7.) Plaintiff somehow learned that TriState Motor Group was "selling used cars with cracked engines to the public" and was advised by the United States Attorney's Office to file a complaint about the TriState Motor Group's alleged fraud with the "prosecutors office." (*Id.*) Plaintiff does not state whether he ever filed this complaint.

---

[1] Plaintiff also lists the date of arrest as September 3, 2015. (ECF No. 16 at 8.)

[2] Plaintiff does not actually state what his eventual response to learning of TriState Motor Group's alleged fraud was.

2

According to Plaintiff, Carey obtained his "social" from someone at TriState Motor Group and obtained a warrant to surveil Plaintiff by telephone and email. (*Id.*) Carey obtained Plaintiff's IP address by tracking Plaintiff's comments in response to an online post of a shooting death. (*Id.*)

Plaintiff has allegedly experienced ongoing surveillance since his September 2, 2016 arrest and is aware of a plan by Carey and Defendant Judge Silva to have him arrested or killed in New Jersey or Georgia. (*Id.*) In December of 2017, Carey approached Plaintiff at a football game and told him, "You're lucky you weren't home when I sent the cops to your house." (*Id.* at 8.) Carey also advised Plaintiff to leave New Jersey for his safety. (*Id.*) Moreover, Plaintiff alleges that Carey has had police officers from the Plainsboro Police Department harass his son at his school and at home by calling him racial slurs and threatening to kill him.

Plaintiff provides that his association with Judge Silva, whom he originally knew as "Marcia Maltez," began in 2014 through Match.com. (*Id.* at 5.) Plaintiff indicates that Judge Silva "disappeared after she asked me if I've ever lived in Somerville or Somerset County." (*Id.*) Plaintiff alleges that Judge Silva, who was working as an Assistant Prosecutor in Carey's office, worked with Carey to frame Plaintiff for a crime he did not commit. Additionally, Plaintiff alleges Judge Silva submitted forged Georgia Child Services documents to family court. (*Id.*) Plaintiff accuses Judge Silva of using her influence to have Diane Pincus re-assign Plaintiff's matters to a different jurisdiction as well as to particular prosecutors and state and federal judges.[3]

Although Plaintiff's amended complaint does not spell it out, it seems as though some of Judge Silva's alleged conduct was carried out during her tenure as a family court judge. (*Id.*) He

---

[3] Plaintiff lists, *inter alia*, United States District Judge Freda L. Wolfson of the District of New Jersey as being one of the judges that Defendants Silva and Carey influenced by having Plaintiff's matters assigned to her. Although this matter was before Judge Wolfson at the time of its filing, it has since been re-assigned to the undersigned.

refers to a void order that Judge Silva issued as well as Judge Silva having sent his custody case to Georgia. (*Id.*) Plaintiff adds that he experienced physically threatening behavior from court deputies during a meeting in Judge Silva's chambers. (*Id.* at 6.)

Sometime after Plaintiff learned of TriState Motor Group's alleged fraud of its customers, Carey berated him on the telephone. (*Id.* at 9.) Plaintiff claims he filed a complaint with Ronald Rios, whom Plaintiff alleges failed to comply with his supervisory obligations by allowing one of his subordinates, Carey, to continue to violate Plaintiff's rights. (*Id.*)

Plaintiff seeks damages in the amount of $11,870,000, as well as punitive damages. (*Id.* at 11.) Plaintiff also seeks injunctive relief. More specifically, he asks that this Court "[v]oid Silva's custody order due to the fact that Silva had no jurisdiction to hear this case." (*Id.* at 10.) Furthermore, he seeks "injunctive relief against Andrew Carey and Middlesex County to cease all forms of harassment or gangstalking." (*Id.* at 11.)

## II. LEGAL STANDARD

### A. Standard for *Sua Sponte* Dismissal

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B), if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who us immune from such relief." *Ball v. Famiglio*, 726 F.3d n448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. Cty. Of Alleghany*, 515 F.3d 224, 229 (3d Cir. 20098); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

5

alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. DISCUSSION

Plaintiff alleges violations of the Fourth, Fifth and Ninth Amendments to the United States Constitution as well as a conspiracy pursuant to 18 U.S.C. § 371. (ECF No. 16 at 3 and 10.) Plaintiff does not specify which alleged act implicates the particular constitutional and/or statutory right.

At the outset, all of Plaintiff's claims against the state actor defendants in their official capacity for monetary damages are dismissed with prejudice. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 72-73 (1989). A suit against a state official in his official capacity is a suit against the official's office, thus, making it no different from a suit against the state itself. *Will*, 491 U.S. at 71. Plaintiff's claims against state officials in their official capacity are in direct contravention of well-established law asserting that states are not persons for purposes of section 1983. *Id.* at 65-67. To the extent that Plaintiff is suing defendants for monetary damages in their official capacities, he is not entitled to monetary relief under such a theory. *Id.*

While the Eleventh Amendment's sovereign immunity provision precludes Plaintiff's claims against Carey and Silva for monetary damages, it does not prohibit claims for prospective injunctive relief against such state officials. *Hindes v. F.D.I.C.*, 137 F.3d 148, 165 (3d. Cir. 1998) (holding that a state official may be sued in his official capacity for prospective injunctive relief)). However, for the reasons described *infra*, Plaintiff's claims for injunctive relief against Carey and Silva in their official capacities will be dismissed without prejudice, albeit for Plaintiff's failure to state a claim.

## A. Andrew Carey

### i. Fourth Amendment

This Court will construe Plaintiff's false arrest allegation as well as his unlawful surveillance allegation as Fourth Amendment claims against Carey.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1988) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)).

When establishing a false arrest claim, a Plaintiff must establish that the police lacked probable cause to make the arrest. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). Here, Plaintiff provides absolutely no facts about the alleged arrest itself. The amended complaint is silent about what jurisdiction the arrest took place in, which agency conducted the arrest, or what the arrest charges entailed.

Plaintiff also repeatedly refers to Carey's having abused his office to obtain warrants to surveil Plaintiff. The only corroborating facts Plaintiff provides are as follows:

> Andrew Carey and company have been listening in on my calls for years now and I said nothing. On 9.8.18 on or around 11AM I called a lady friend and we both heard someone dropping then fumbling and clicking on a recorder then I could hear the person speaking in the background. This lady friend had no idea what the noise was but I did. I know Carey and his white supremacy friends in law enforcement gang stalking me and my family.
>
> I know my email, call logs, texts are being looked at. Carey and cronies have reached out to my friends, family and their employers who work in law enforcement to try and paint me as a criminal.

(ECF No. 16 at 7.)

Plaintiff states he was aware that his communications were being monitored. Moreover, Plaintiff refers to Carey having obtained warrants to conduct the alleged surveillance but he does not provide how he became aware of the warrants' issuance or existence. While telephonic and other forms of electronic surveillance certainly fall under the Fourth Amendment's purview, *see United States v. Cafero*, 473 F.2d 489, 494 (3d Cir. 1973), Plaintiff has not stated with any facial plausibility that this surveillance indeed occurred. *See Fairwind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of his amended complaint are plausible. *Id.* at 677-78; *see also Twombly*, 505 U.S. at 555, & n.3; *Fowler v. UPMC Shadvside*, 578 F.3d 203, 210 (3d Cir.2009). Here, Plaintiff's allegation of unlawful surveillance lacks any information to support how Carey was involved nor does it provide details about each instance of alleged surveillance other than the September 8, 2018, telephone call where Plaintiff "knew" he was being wiretapped. Plaintiff's amended complaint contains nothing more than naked assertions that wiretapping and other forms of electronic surveillance occurred. Here, the Court does not find Plaintiff has sufficiently alleged facts to make a Fourth Amendment claim against Carey. Therefore, Plaintiff's Fourth Amendment claims against Carey in his official capacity for injunctive relief and his Fourth Amendment claims against Carey in his individual capacity are dismissed without prejudice.

  ii. <u>Fifth Amendment</u>

Turning next to Plaintiff's Fifth Amendment claim, Plaintiff does not articulate which supposed acts of Carey's implicate the Fifth Amendment.

"The Fifth Amendment prevents a state from compelling a person to incriminate himself or herself." *Renchenski v. Williams*, 662 F.3d 315, 332 (3d Cir. 2010). The amended complaint does not allude to any instance where Plaintiff was compelled to incriminate himself. Therefore, Plaintiff has not made a valid Fifth Amendment claim against Carey. Accordingly, Plaintiff's Fifth Amendment claims against Carey in his official capacity for injunctive relief and his Fifth Amendment claim against Carey in his individual capacity are dismissed without prejudice.[4]

    iii.    Ninth Amendment

Similar to Plaintiff's claims of Fifth Amendment violations, Plaintiff has not identified how Carey's actions implicate the Ninth Amendment.

The Ninth Amendment to the United States Constitution states as follows: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "The Ninth Amendment does not independently provide a source of individual constitutional rights." *See Clayworth v. Luzerne Cnty., Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (citation omitted). Plaintiff invokes the Ninth Amendment with no further factual assertions fails to make a valid claim. Accordingly, Plaintiff's Ninth Amendment claim against Carey in his official capacity for injunctive relief is dismissed without prejudice as is his Ninth Amendment claim against Carey in his individual capacity.

    iv.    Conspiracy

Finally, Plaintiff alleges a conspiracy pursuant to 18 U.S.C. § 371. In order to prove a violation of 18 U.S.C. § 371, the evidence must establish the "(1) an agreement to defraud the

---

[4] To the extent Plaintiff is raising a due process claim under the Fifth Amendment, that claim also fails because the Fifth Amendment applies only to acts of the Federal government and not to conduct by states, state agencies, or state officials. *See Bergdoll v. City of York,* 515 F. App'x 165, 170 (3d Cir. 2013) (*citing Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)).

United States, (2) an overt act by one of the conspirators in furtherance of that objective, and (3) any conspirator's commission of at least one overt act in furtherance of the conspiracy." *See United States v. McKee,* 508 F.3d 225, 238 (3d Cir. 2007).

Plaintiff's amended complaint does not allege facts that meet the statute's first requirement—an agreement to defraud the United States. Therefore, Plaintiff's conspiracy claim under 18 U.S.C. § 371 fails. *See* 18 U.S.C. § 371.

Nonetheless, the Court will construe Plaintiff's conspiracy claim as one arising under section 1983. To prevail on such a claim, a plaintiff must prove "that persons acting under color of law reached an understanding to deprive him of his constitutional rights." *Jutrowksi v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (internal quotation marks and citation omitted). Moreover, once the plaintiff establishes "that the object of the conspiracy was the deprivation of a federally protected right, the rule is clear that the plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.* at 295 (internal quotation marks and citations omitted). Here, Plaintiff has not provided any allegations to support that any of the defendants reached an understanding to deny Plaintiff of his rights. Therefore, Plaintiff has not made a valid conspiracy claim under section 1983. Plaintiff's conspiracy claim is dismissed without prejudice.

### B. Judge Silva

Plaintiff's amended complaint is unclear as to whether Judge Silva's alleged conduct occurred both before and/or during her tenure on the bench. It is also unclear what, if anything, Judge Silva is alleged to have done during her tenure as a prosecutor in the same office as Carey. The amended complaint provides far more instances of Judge Silva's alleged conduct against Plaintiff during her tenure as a member of the judiciary. Plaintiff provides that, during her time as

a judge, Judge Silva "had Morielli call [Plaintiff's] mother incessantly." (ECF No. 16 at 6.) Moreover, Plaintiff alleges that Judge Silva was a complaining witness against Plaintiff "when she framed [Plaintiff] for a crime. (*Id.*) Plaintiff does not provide any further factual information about this alleged framing. Plaintiff also makes several references to a custody case with which Judge Silva had jurisdiction over.

To the extent that Plaintiff is alleging that Judge Silva engaged in this unlawful conduct in her capacity as a judge, all section 1983 claims against Judge Silva are dismissed with prejudice. Indeed, "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citation omitted). The Supreme Court has identified two exceptions to judicial immunity. "First, a judge is not immune from liability for non-judicial acts, i.e., actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). To determine whether an act qualifies as a judicial act, courts look to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. Moreover, judicial immunity forecloses claims for damages. *See Larsen v. Senate of the Commonwealth*, 152 F.3d 240, 249 (3d Cir. 1998).

As previously mentioned, Plaintiff does not indicate what, if any, unlawful conduct Judge Silva engaged in prior to ascending the bench. Plaintiff has not provided the Court with sufficient facts to determine whether Judge Silva engaged in any of the alleged violations in a capacity outside of her authority. As such, all claims against Judge Silva that were purportedly outside the

11

performance of her duties are dismissed without prejudice. Plaintiff has not made any viable Fourth, Fifth or Ninth Amendment claims against Judge Silva. Finally, as the Court explained in the preceding section, Plaintiff has not demonstrated that any of the defendants entered into a conspiracy under section 1983. Therefore, any claims for damages against Judge Silva in her judicial capacity are dismissed without prejudice.

To the extent that Plaintiff seeks injunctive relief against Judge Silva in the form of voiding a custody order, Plaintiff has not met the criteria for such relief, and the request is denied. *See Rashduni v. Melchionne*, 2016 WL 4046980, *3-4 (D.N.J. July 26, 2016) (denied section 1983 Plaintiff's request for injunctive relief from a custody order that terminated his visitation rights because of the statutory bar to injunctive relief against judges in the absence of a violation of a declaratory decree and also because Plaintiff failed to demonstrate a substantial showing on the merits in his custody case).

### C. Ronald Rios

Defendant Rios appears to be named in a supervisory capacity. Plaintiff does not provide what entity or organization Rios served in a supervisory capacity. However, in light of Plaintiff's submission that Rios supervised Carey, the Court construes Rios as having been a prosecutor as well.

Generally, local government units and supervisors are not liable under section 1983 solely on a theory of *respondeat superior*. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility*, 318

F.3d 575, 583–84 (3d Cir. 2003). There are "two general ways" in which a supervisor-defendant may be liable for deficient policies: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 3016-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, ---- U.S. ----, 135 S. Ct. 2041, 2043, 192 L.Ed.2d 78 (2015). These two general types of supervisory liability are as follows:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. Id. (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). "Failure to" claims-failure to train, failure to discipline, or as in the case here, failure to supervise-are generally considered a subcategory of policy or practice liability.

*Id.*

Here, Plaintiff has not alleged facts to demonstrate Rios' personal direction or knowledge and acquiescence to Carey's conduct. Nor has he alleged facts to demonstrate a custom, practice or policy under Rios' supervision that directly caused a constitutional harm.

Therefore, all claims against Rios in his individual capacity are dismissed without prejudice.

**D. Phil Murphy, Plainsboro (Brandon)**

Phil Murphy and Plainsboro (Brandon) are solely named in the case caption without any additional allegations. The claims against Defendants Phil Murphy and Plainsboro (Brandon), in their individual capacity, are dismissed without prejudice for failure to state a claim. *See Green v.*

13

*New Jersey*, 625 F. App'x 73, 76 (3d Cir. 2015) (holding that dismissing claims against defendants that are only named in the caption is proper under *Iqbal's* pleading standard).

### E. Middlesex County, Middlesex County Prosecutor's Office, Middlesex County Sheriff's Office, Linda Lang Infusino, Diane Pincus, Mildred Scott, Debra Vezenia

Plaintiff's allegation against Middlesex County is found solely in his request for injunctive relief where he asks the Court "to file an injunctive relief against Andrew Carey and Middlesex County to cease all forms of harassment or gangstalking." (ECF No. 16 at 11.) He does not elaborate anything further about the alleged harassment or gang stalking.

Other than Plaintiff's claims against Carey, who the Court infers was a member of the Middlesex County Prosecutor's Office during the relevant time period, Plaintiff does not make any independent allegations against the Middlesex County Prosecutor's Office.

Further, Plaintiff does not make any specific allegations against the Middlesex County Sheriff's office. His only reference to the Sheriff's office consists of the following: "Since 2013 or 2014 this mugshot with my social has been floating around and the prosecutor's office, Sherriff's office, Criminal Court, Family Court in Middlesex County has and continue to violate my 4th, 5th, 9th amendment right." (ECF No. 16 at 9.)

Plaintiff's only reference to Linda Lang Infusino consists of the following- "I was fingerprinted by Linda after she showed me a mugshot seeing it looked nothing like me. Linda knew Carey was behind this because her last comment to me was, 'Mr. Neptune thinks everyone is out to get him.'" (*Id.* at 10.)

Plaintiff also alleges that Judge Diane Pincus "willfully ignored [her] Oath and ignored [her] Code of Judicial Conduct as judges." (ECF No. 16 at 2.) Plaintiff argues that Judge Pincus "sent this fake case to Union County. Kirsch whom I respected before for obvious reasons accused

me of molesting my daughter, told me I could face 5 years in jail for being charged with 3 counts of forgery in the 3rd degree. Kirsch recognize me BTW [sic]." (*Id.* at 2.)

Plaintiff provides the following about Judge Debra Venezia: "I filed multiple complaints against Silva for violating my rights. Debra Venezia instead was in Pincus's courtroom waiting for me to take a plea for something I didn't do. I'm sure everyone noticed the original mugshot the kid looked nothing like me but everyone said nothing." (*Id.* at 9.)

Finally, Plaintiff's only reference to Defendant Mildred Scott in the amended complaint is as follows: "I tried to get his name to file a complaint but I was denied that opportunity by Carey and Mildred Scott['s] office." (ECF No. 16 at 6.) Plaintiff does not state exactly who Mildred Scott is or what the office he refers to entails.

Plaintiff's claims against Middlesex County Prosecutor's Office, Linda Lang Infusino, Judge Diane Pincus, Judge Debra Venezia and Mildred Scott amount to statements that do not suggest any wrongdoing. As for his allegations against the Middlesex County Sheriff's office, Plaintiff provides nothing more than a conclusory statement that his constitutional rights were violated. Finally, with respect to his statement that Middlesex County has harassed and gangstalked Plaintiff, he again does not provide any further information to support this bare and conclusory allegation. Accordingly, Plaintiff's claims against Middlesex County, Middlesex County Prosecutor's Office, Linda Lang Infusino, Judge Diane Pincus, Judge Debra Venezia and Mildred Scott are dismissed for failure to state a claim. Moreover, Plaintiff's claim for injunctive relief against Middlesex County is dismissed. *See Rashduni*, 2016 WL 4046980 at *3-4 (citations omitted) ("A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and (4) that an injunction is in the public interest."))

## IV. MOTION FOR EMERGENT INJUNCTIVE RELIEF

Plaintiff's motion, labeled as an "Emergent Motion for Declaratory, Injunctive and Other Appropriate Relief" (ECF No. 24), is likewise denied. On February 14, 2019, Plaintiff filed the motion requesting, *inter alia*, this Court to compel production of evidence from the "prosecutor's office," order named defendants to stop discussing Plaintiff's custody case, and to order Carey to correct Plaintiff's birthdate and other identifying information in his arrest record. (*Id.* at 2-3.)

Plaintiff has not demonstrated the elements necessary to secure the extraordinary relief of a preliminary injunction. *See Rashduni,* 2016 WL 4046980 at *3-4. Therefore, relief is denied.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Fourth Amendment, Fifth Amendment, Ninth Amendment and conspiracy claims against all defendants in their official capacity are dismissed with prejudice. Plaintiff's Fourth Amendment, Fifth Amendment, Ninth Amendment and conspiracy claims against all defendants in their individual capacity are dismissed without prejudice for failure to state a claim upon which relief may be granted. Any claims against Judge Silva that are alleged to have occurred in her judicial capacity are dismissed with prejudice. Finally, Plaintiff's emergent motion for relief (ECF No. 24) is denied. An appropriate order follows.

Dated: February 25, 2019  */s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE